***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments of the parties. The Defendants have shown good grounds to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 *********** *Page 2 
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. It is stipulated that all parties are properly brought before the Industrial Commission, are subject to and bound by the provisions of the Workers' Compensation Act, that the Commission has jurisdiction over the parties and of the subject matter, and that an employer-employee relationship existed between Plaintiff and Employer-Defendant.
2. It is stipulated that all parties have been correctly designated, and there are no questions as to misjoinder or nonjoinder of the parties.
3. It is stipulated that all carriers have been correctly designated, and there are no questions as to insurance coverage of the parties.
4. It is stipulated that Plaintiff's appropriate average weekly wage for this claim is $420.00, yielding a compensation rate of $280.01.
5. Documents entered into evidence include the following:
 (a) Stipulated Exhibit #1 — Pre-Trial Agreement
 (b) Stipulated Exhibit #2 — Plaintiff's medical records; I.C. Forms 18, 19, 60 and 63; Form 24 Application to Terminate Compensation; Response to Form 24; Administrative Order by Special Deputy Commissioner Christopher B. Rawls
 (c) Plaintiff's Exhibit #1 — Job Search records
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following: *Page 3 
 FINDINGS OF FACT
1. Plaintiff Timoteo Martinez-Baraja testified in support of his claim at the July 21, 2009, hearing before the Deputy Commissioner, via a Spanish-speaking interpreter. At the time of the hearing, Plaintiff was thirty-three years old and living in Raleigh, North Carolina, with his girlfriend and their minor children. Plaintiff was not employed at the time of the hearing.
2. On May 6, 2008, Plaintiff suffered a compensable work injury when he fell backwards after tripping while carrying concrete and he hit his right elbow on another piece of concrete.
3. On May 6, 2008, Plaintiff went to the Wake Med emergency room where an x-ray of his elbow revealed that Plaintiff suffered a nondisplaced radial head fracture.
4. On May 15, 2008, Plaintiff was seen in follow up by Neal Cole, PA-C, of Wake Faculty Physicians. Mr. Cole confirmed that Plaintiff had a nondisplaced radial head fracture, instructed him to begin working on range of motion and restricted him from lifting with his right hand.
5. Plaintiff returned to Wake Faculty Physicians on May 29, 2008, at which time he was referred to physical therapy and told he would see Dr. Meinberg in one month.
6. Defendants accepted the claim as compensable on a Form 60 dated July 22, 2008.
7. Upon acceptance of the claim, Defendants authorized treatment for Plaintiff with Wake Orthopaedics, and on July 21, 2008, Plaintiff was evaluated by Dr. Mark L. Wood.
8. On July 21, 2008, Dr. Wood prescribed therapy for aggressive terminal stretching and strengthening. He also restricted Plaintiff from lifting for two months and thought Plaintiff would be able to return to full duty upon expiration of the two months, but also noted that a *Page 4 
Functional Capacity Evaluation (hereinafter, "FCE") might be needed to assess Plaintiff's capabilities.
9. On September 10, 2008, Dr. Wood released Plaintiff to full duty work with a five percent (5%) rating. At that time, he noted a normal physical examination, except for tenderness over the ante-cubital fossa, and that Plaintiff may continue to have mild pain and may require over the counter medication.
10. Subsequent to his release, Plaintiff requested an FCE, which was conducted on November 21, 2008, by Alex S. Arab, PT. Mr. Arab determined that Plaintiff should be able to return to full duty work.
11. Plaintiff returned to Dr. Wood on February 16, 2009. Plaintiff reported that he had returned to full duty work, but was experiencing occasional pain with lifting. Based on his physical exam of Plaintiff, Dr. Wood released Plaintiff from his care and authorized Plaintiff to return to full duty work.
12. On June 5, 2009, Plaintiff attended a second opinion with Dr. Harrison Tuttle of Raleigh Orthopaedic Clinic, P.A. Dr. Tuttle noted that Plaintiff had a normal examination except that "with stress testing the elbow, trying to extend the elbow with the forearm supinated, while applying some valgus stress, there is some soreness." Given the objective mechanical symptoms he found upon examination, Dr. Tuttle recommended an MR arthogram to rule out a loose body and ligamentous injury. However, Dr. Tuttle thought the elbow was "pretty stable", and was hesitant to say that Plaintiff had any instability in the elbow. If Plaintiff's MR arthogram were to confirm instability, the impairment rating would likely change from five percent (5%). *Page 5 
13. It is Dr. Tuttle's expert medical opinion within a reasonable degree of medical certainty that in order to complete his second opinion evaluation, he must first review an MR arthogram to rule out loose bodies or a ligamentous injury to Plaintiff's elbow.
14. The greater weight of the evidence is given to Dr. Wood's expert medical opinions regarding Plaintiff's elbow condition, release to work, restrictions, and/or any need for future medical treatment.
15. Plaintiff testified that he conducted a job search from June 17 through June 29, 2009. Plaintiff testified that he inquired about fifteen jobs during that time span, however, Plaintiff never submitted a resume or application to any of those potential employers. This job search was conducted just over three weeks prior to the hearing before the Deputy Commissioner on July 21, 2009.
16. The Full Commission finds by the greater weight of the evidence that Plaintiff has not conducted a reasonable job search.
17. The greater weight of the evidence shows that Plaintiff may engage in full duty work. The Full Commission finds that Plaintiff has failed to meet his burden to establish that searching for work at this time would be futile.
18. The Full Commission finds that Plaintiff has failed to show that he was unable to earn his pre-injury wages at any employment as a result of his compensable injury after his release to work by Dr. Wood on February 16, 2009.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 6 
1. Plaintiff suffered a compensable injury to his right elbow on May 6, 2008, while working for Defendant-Employer. N.C. Gen. Stat. § 97-2(6). However, Plaintiff has the burden to prove the existence and extent of his disability.Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982).
2. To prove disability, an injured worker must prove that he is unable to earn the wages which he was earning at the time of the injury in the same or any other employment. N.C. Gen. Stat. § 97-2(9).
3. Plaintiff may meet his burden of proving disability by producing (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
4. Plaintiff has failed to prove that he was totally disabled after February 16, 2009. Defendants are entitled to a credit for overpayment of temporary total disability paid after February 16, 2009. Plaintiff was capable of some work and failed to make a reasonable job search. Plaintiff has failed to prove any further temporary disability related to his compensable injury. Id.
5. The greater weight of the evidence shows that Plaintiff is entitled to temporary total disability benefits from May 6, 2008, through February 16, 2009. Id. *Page 7 
6 At the end of the healing period, Plaintiff is entitled to receive compensation for total or partial disability under N.C. Gen. Stat. § 97-29 or § 97-30 or compensation for permanent partial disability under N.C. Gen. Stat. § 97-31, but not both. Collins v. Speedway Motorsports Corp.,165 N.C. App. 113, 598 S.E.2d 185 (2004). Plaintiff reached maximum medical improvement on February 16, 2009, and has failed to establish further temporary disability after reaching maximum medical improvement.
7. Dr. Wood has assigned Plaintiff a five percent (5%) permanent partial disability rating to the hand. Defendants are entitled to a credit against Plaintiff's 5% rating for any overpayment of temporary total disability paid to Plaintiff after February 16, 2009. Plaintiff has already recovered his 5% permanent partial disability rating and, therefore, is not entitled to any further recovery of permanent partial disability.
8. Plaintiff has failed to prove that he is entitled to further medical compensation after February 16, 2009. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Defendants shall pay to Plaintiff temporary total disability benefits from May 6, 2008, to February 16, 2009.
2. Defendants are entitled to a credit against Plaintiff's 5% rating and a credit against any future compensation that may be paid to Plaintiff, for any overpayment of temporary total disability payments paid to Plaintiff after February 16, 2009, through the date of this Amended Opinion and Award. *Page 8 
3. Each side shall bear its own costs.
This the 28th day of October, 2010.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ LINDA CHEATHAM COMMISSIONER *Page 1